# Supreme Court of Florida

———————

No. SC20-1251

———————

**INQUIRY CONCERNING A JUDGE NO. 20-155 RE: RICHARD HOWARD.**

May 20, 2021

PER CURIAM.

In this case, we have before us the findings and recommendation of the Florida Judicial Qualifications Commission (JQC) concerning Judge Richard Howard of the Fifth Judicial Circuit, as well as the stipulation entered into by Judge Howard and the JQC. We approve the parties' stipulation that Judge Howard should be publicly reprimanded because he acted inappropriately when he attempted to dissuade a judicial candidate (the candidate) from running against an incumbent judge (the first incumbent), and attempted to persuade the candidate to either run against a different incumbent judge (the second incumbent), or to forgo the campaign altogether.

This case arises from a series of events that began in early April of 2019. As stipulated by the parties and as set forth in the JQC Investigative Panel's Findings and Recommendation of Discipline:

> In early April 2019, the husband of the candidate was told that he should contact Judge Howard who would explain why the candidate should run against a different judge in Citrus County. Judge Howard's personal phone number was provided to the candidate's husband who called Judge Howard. Judge Howard suggested that the candidate and her husband meet with him at an event for the local Boy Scouts. The candidate was unable to attend, but her husband did. At the Boy Scout event Judge Howard explained that [the first incumbent] enjoyed strong support, and further recommended that the candidate change races to target [the second incumbent] in Citrus County. Judge Howard stated that he would like to and would be willing to meet and speak with the candidate herself, so her husband advised that he would pass along Judge Howard's contact information. Subsequently, on April 17, 2019, Judge Howard met with the candidate and her law partner/campaign treasurer at their law office.

At the candidate's law office,

> Judge Howard met in person with the candidate and her law partner for somewhere between 20 and 50 minutes. During this meeting, Judge Howard questioned the candidate's reasons for running for judge. In response to her answers, Judge Howard told her that her reasons were not good enough. Judge Howard also attempted to persuade the candidate not to run against [the first incumbent], who in his estimation, was doing a good job and enjoyed the support of the community. Judge

- 2 -

Howard repeatedly suggested that the candidate switch her candidacy to run against [the second incumbent] in Citrus County, who was also up for election in 2020, because Judge Howard perceived [the second incumbent] as a weaker and more vulnerable candidate. Alternatively, if the candidate was unwilling to change races to run against [the second incumbent], Judge Howard suggested that the candidate drop her candidacy against [the first incumbent] in favor of seeking appointment to some future seat through the Judicial Nominating Commission (JNC) process. When the candidate asked if Judge Howard would be willing to provide a recommendation if the JNC contacted him about her, Judge Howard stated that he does not do that.

Ultimately, the candidate did not forgo her campaign against the first incumbent.

Based on this sequence of events, the JQC Investigative Panel found that there was clear and convincing evidence of the following:

Judge Howard's meeting first with the candidate's husband, and later with the candidate herself, was to attempt to dissuade the candidate from running against [the first incumbent], against whom the candidate had already filed papers to run, and to seek a judicial seat through any other means, recommending, instead, a different incumbent whom the candidate might target, and then suggesting the JNC process.

The JQC concluded that Judge Howard's conduct constituted "both support of and opposition to a candidate in violation of Canon 7[A(1)(b)]"; "failed to uphold the integrity and independence of the judiciary in violation of Canon 1"; "created the appearance of

- 3 -

impropriety in violation of Canon 2"; "failed to promote public confidence in the impartiality of the judiciary as required by Canon 2A"; and "constituted an improper use of the prestige of his position in favor of the private interest of [the first incumbent], contrary to Canon 2B."

After finding that Judge Howard's actions violated the Canons, the JQC noted that Judge Howard accepted full responsibility, cooperated with the JQC throughout the process of investigation, and acknowledged that his actions were inappropriate and should have never occurred. The JQC further noted that Judge Howard has no prior discipline as a judge since his appointment in 2000 and no disciplinary history with The Florida Bar. The JQC then recommended that Judge Howard be publicly reprimanded for his violation of the Canons. Judge Howard admitted his conduct and conceded that such conduct was improper.

We approve the stipulation entered by Judge Howard and the JQC. But we decline to endorse the conclusion that Judge Howard's conduct as detailed in the JQC findings involved endorsing and opposing candidates for office in violation of Canon

- 4 -

7A(1)(b), which prohibits "*publicly* endors[ing] or *publicly* oppos[ing] another candidate for public office."  (Emphasis added.)

Consequently, Judge Richard Howard is ordered to appear before this Court for the administration of a public reprimand at a time to be established by the Clerk of this Court.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – Judicial Qualifications Commission

Honorable Michelle Morley, Chair, and Alexander J. Williams, General Counsel, Judicial Qualifications Commission, Tallahassee, Florida,

for Florida Judicial Qualifications Commission, Petitioner

Scott Tozian of Smith Tozian Daniel & Davis, P.A., Tampa, Florida,

for Judge Richard Howard, Respondent